AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | |
|---|---|
| United States of America <br> v. <br> Pablo Zuniga Cartes; Ignacio Zuniga Cartes; Bastian Jimenez Freraut; Jordan Quiroga Sanchez; Bastian Orellano Morales; Alexander Huiaguil Chavez; Sergio Ortego Cabello <br> *Defendant(s)* | ) ) ) ) ) ) ) ) | Case No. 8:25-mj-1152-AAS |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __October 5, 2024 to Present__ in the county of __Hillsborough (Multiple)__ in the __Middle__ District of __Florida (and elsewhere)__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Commit Violations of 18 U.S.C. § 2314 (Interstate Transportation of Stolen Property) |

This criminal complaint is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

SA Mark Sterling Dennis, FBI
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: January 30, 2025

*Judge's signature*

City and state: Tampa, FL

AMANDA A. SANSONE, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Mark Sterling Dennis, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I submit this affidavit in support of a criminal complaint alleging that

    (a) PABLO ZUNIGA CARTES (P. ZUNIGA CARTES);

    (b) IGNACIO ZUNIGA CARTES (I. ZUNIGA CARTES);

    (c) BASTIAN JIMENEZ FRERAUT (FRERAUT);

    (d) JORDAN QUIROGA SANCHEZ (SANCHEZ);

    (e) BASTIAN ORELLANO MORALES (ORELLANA);

    (f) ALEXANDER HUIAGUIL CHAVEZ (CHAVEZ); and

    (g) SERGIO ORTEGA CABELLO (CABELLO),

(collectively, "the Defendants") committed violations of Interstate Transportation of Stolen Property and conspired to do the same in the Middle District of Florida and elsewhere, all in violation of 18 U.S.C. §§ 371 and 2314. As described in further detail below, the defendants and others known and unknown, conspired to burglarize the homes of professional athletes around the country. One of these burglaries occurred in the Middle District of Florida, one or more of the conspirators resides in the Middle District of Florida, and one or more conspirators traveled to and through the Middle District of Florida in furtherance of the conspiracy. I further submit that the acts described within this affidavit were reasonably foreseeable to the defendants.

1

2.  It is a violation of federal law to transport, transmit, or transfer in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud. 18 U.S.C. § 2314. It is a separate federal crime to conspire to commit acts in violation of 18 U.S.C. § 2314. *See* 18 U.S.C. § 371.

3.  I am a Special Agent with the Federal Bureau of Investigation (hereinafter, "FBI"). I have been employed with the FBI since September 2019. I am currently assigned to a unit that investigates criminal enterprises, organized crime, and major theft out of the Tampa Field Office Lakeland Resident Agency. Prior to being employed with the FBI, I was a police officer with the Sandy City Police Department in Sandy, Utah, for approximately five years.

4.  I have specialized training in narcotics identification, street-level drug trafficking, surveillance, organized crime, and drug abatement techniques. I have received training in criminal enterprise organizations, including attendance at in-service trainings sponsored by the FBI and on-the-job training. I have participated in investigations that utilized Title III investigations, telephone records, and Apple iCloud accounts to effectively identify subjects and gather evidence. I have used global positioning system (hereinafter, "GPS") information obtained through mobile phones to successfully locate persons who are the subjects of criminal investigations. In addition, I have drafted and participated in the execution of dozens of search warrants that resulted in valuable evidence collection and the seizure of narcotics and

assets. I am in regular contact with law-enforcement personnel who specialize in the area of criminal enterprises and violent crimes.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### A. Overview of Investigation and Characteristics of South American Theft Groups

6. The FBI is investigating a Chilean South American Theft Group ("SATG") that is responsible for several residential burglaries of high-profile athletes in the National Football League ("NFL"), National Basketball Association ("NBA"), and National Hockey League ("NHL"). The Chilean SATG is known to travel throughout the United States and burglarize residences belonging to popular and well-known professional athletes. The Chilean SATG is responsible for stealing jewelry, expensive brand watches, United States currency, and other high-value merchandise. Each of the burglaries described in this affidavit involved the thefts of money and other items in excess of $5,000.

7. Due to my training and experience in this investigation and several similar SATG investigations, I know that SATGs will commit their criminal acts with associates and co-conspirators from the same country. Also, SATGs will divide

out responsibilities to each member such as renting vehicles, obtaining hotels or short-stay rentals, acquiring fraudulent identification, and contacting "fences" (buyers) of the stolen merchandise. SATGs are well-coordinated organizations and knowledgeable of law enforcement investigative techniques. SATGs often acquire multiple cellular devices that have no accurate subscriber information, also known as "throw phones." SATGs will use the cellular devices for a short period of time, sometimes less than a month, before discarding either the cellular device or SIM card, thereby making it very difficult to attribute individual subjects to a particular cellular device. Moreover, after committing their criminal acts, SATGs will contact a buyer for the stolen merchandise and start negotiating a price. Often, the buyer will pay in cash for the stolen merchandise to eliminate any methods of tracking purchasing information such as receipts or bank transaction data. SATGs will then funnel the money into their personal accounts or send it to associates, co-conspirators, or family in their respective country. SATGs will often work together in separate but similar groups, akin to individual cells. By separating in smaller groups of four or five members, the SATG can target multiple victims, maximize their profits, and continue to keep a low-profile while committing their criminal acts. However, though burglary groups may consist of four to five members, these separate groups often work in concert with one another, communicate with one another, and liaise with the same buyers of stolen merchandise.

8. Through search warrants, subpoenaed information, and other evidence, I identified that members of this SATG have committed burglaries in the Middle

District of Florida and throughout the country. I further identified that members of the SATG rent vehicles in Florida that are later found in the vicinity of burglaries committed nationwide of prominent athletes.

9. Throughout this investigation, I identified that this Chilean SATG has a clear and consistent *modus operandi*. The Chilean SATG is known to target high-profile professional athletes while they are known to be away from home. In many circumstances, professional sports teams will publicize their schedules and locations of their games, making it easy for the SATG to know when a particular athlete on a particular professional sport team will be away from his residence. Also, this SATG will approach the residences from cover such as, but not limited to, a wooded or dark area. The SATG will then break into the residence by breaking a window or using a crowbar to open a sliding door. The SATG enters the residence and steals jewelry, expensive watches, United States currency, and expensive merchandise. On at least one occasion, described below, the SATG stole the safe from a professional athlete's home and opened the safe at a separate location. This SATG uses "throw phones" that do not have any accurate subscriber information linked to them. Members of the SATG will use the cellular devices for about one month before switching cellular devices or SIM cards to continue to thwart law enforcement.

**B. Burglary of Tampa Bay Buccaneers Player on October 21, 2024**

10. On or about October 21, 2024, between the hours of 6:30 p.m. and 10:30 p.m., a residential burglary occurred at Location 1 in Tampa, in the Middle District of Florida. Professional Athlete 1, a Tampa Bay Buccaneers football player

in the NFL, is the owner of Location 1. At the time of the burglary, the Tampa Bay Buccaneers were playing the Baltimore Ravens at Raymond James Stadium in Tampa.

11. The unknown subjects broke through a window at Location 1 to gain entry. Upon entering, the defendants and others stole multiple pieces of expensive jewelry, Rolex watches, a Louis Vuitton suitcase, and a firearm. The total value of property stolen was approximately $167,000.00.

12. As described in further detail below, I served search warrants for cell tower and Apple iCloud information associated with multiple burglaries. Through the returns of those search warrants I believe that PABLO ZUNIGA CARTES (P. ZUNIGA CARTES) was a participant in this burglary. A cellular device that was later attributed to him was in the vicinity of Location 1 at the time of the burglary, as well as at least one other burglary described below. Moreover, photographs obtained from the iCloud account of P. ZUNIGA CARTES show him and others with the jewelry of Professional Athlete 4 within minutes of his being burglarized, described in further detail later in this affidavit.

13. I also identified a phone number in the vicinity of Location 1 at the time of the burglary that, from Apple iCloud information, is for a phone number ending in 2875 ("the 2875 number") assigned to a subject saved as "Luis." That number was also in the vicinity of Location 5, described later in the affidavit.

### C. Burglary of Kansas City Chiefs Players on October 5 and 7, 2024

14. On October 23, 2024, I learned of three residential burglaries in the Kansas City, Missouri area earlier in the month. In my review of those burglaries, two of them matched the *modus operandi* of Professional Athlete 1's burglary, in that they targeted high-profile professional athletes when it was publicly known that the athletes would not be home. Moreover, the burglars accessed the residences in a similar manner to the burglary of Location 1, and stole similar items such as jewelry, watches, cash, and other luxury merchandise.

15. On or about October 5 and 7, 2024, there were residential burglaries of Locations 2 and 3, the homes of Professional Athletes 2 and 3 respectively. The first burglary was at Location 2 on October 5, and then Location 3 on October 7. The total value of the stolen property at each location was greater than $5,000. Both Professional Athletes 2 and 3 are Kansas City Chiefs football players in the NFL. On the night of October 7, 2024, the Kansas City Chiefs played the New Orleans Saints in a Monday Night Football game at GEHA Field at Arrowhead Stadium in Kansas City, Missouri.

16. On November 1, 2024, United States Magistrate Judge Lindsay Griffin, Middle District of Florida, signed a search warrant for cellular tower data from the Professional Athlete 1 burglary. Investigators also obtained cell tower data from the burglaries of the homes of Professional Athletes 2 and 3. Based on the data obtained from these warrants, as well as other corroborating information below, I believe the burglaries in Tampa and Kansas City were related.

### D. Burglary of Milwaukee Bucks Player on November 2, 2024

17. On or about November 2, 2024, between approximately 6:56 p.m. and 7:10 p.m., a residential burglary occurred at the residence of Professional Athlete 4 at Location 4 in Wisconsin. Professional Athlete 4 plays for the Milwaukee Bucks in the NBA. On the night of the burglary, the Milwaukee Bucks played the Cleveland Cavaliers at the Fiserv Forum in Milwaukee.

18. Surveillance video from the burglary captured two subjects breaking a bedroom window and making entry into the residence. The two subjects stole a safe containing several watches, chains, personal items, jewelry, and cash. Also stolen was a Louis Vuitton suitcase and designer bags. The total value of property stolen was approximately $1,484,000.

19. On or about November 7, 2024, Milwaukee County Circuit Court Judge Laura A. Crivello signed a search warrant for cellular tower data surrounding the burglary timeframe.

### E. Initial Analysis of Cell-Tower Data and Identification of iCloud Data

20. On or about November 21, 2024, I reviewed the search warrant returns for the cellular tower data from the burglaries in Tampa and Wisconsin. From my review of the data, I learned that an International Mobile Subscriber Identifier number was linked to a cellular device that was present during the surrounding timeframes of the burglaries for Professional Athletes 1 and 4 "(the IMSI Number)".

21. The IMSI Number was linked to an International Mobile Equipment Number (the "IMEI Number"), which is another unique identifier for a cellular

8

device. Subscriber information obtained for the IMEI Number from Apple, Inc. ("Apple") revealed that it was associated with an iCloud account of interest ("the iCloud Account").

22. On November 25, 2024, I served a search warrant for the location data, data sessions, and subscriber information for the IMSI Number that was observed in the areas of Locations 1 and 4 during the timeframes of the burglaries.

23. The following day I received the search warrant return. I reviewed the return and learned that the IMSI Number was associated with a Florida cellular telephone number (the "2027 Number"). The 2027 Number was also associated with the IMEI Number.

24. On December 3, 2024, United States Magistrate Judge Anthony Porcelli, Middle District of Florida, authorized a search warrant for the iCloud Account.

### F. Burglary of Cincinnati Bengals Player on December 9, 2024

25. On or about December 9, 2024, police responded to a residential burglary at the home of Professional Athlete 5 at Location 5 in Cincinnati, Ohio. Professional Athlete 5 plays for the Cincinnati Bengals in the NFL. On the night of the burglary, the Cincinnati Bengals were playing the Dallas Cowboys in a Monday Night Football game at AT&T Stadium in Arlington, Texas.

26. The burglars stole from Location 5 designer luggage, glasses, watches, and jewelry valued at about $300,000.

27. Based on my knowledge of the investigation, I believe that the burglary occurred between 6:00 p.m. and 8:14 p.m. on the evening of December 9, 2024. Professional Athlete 5 left his residence the previous day to fly to Dallas, Texas, and a security detail was deployed to watch the residence while he was gone. On December 9, 2024, at about 6:00 p.m., a shift change occurred with the security detail. This shift change included a walk around the perimeter of the house, during which no windows appeared to have been broken. After 6:00 p.m., and during the timeframe of the burglary, the security detail was positioned in the driveway of the front of the residence. I believe that the burglars entered the rear of the property from a wooded area where no security cameras were located.

### G. Burglary of Memphis Grizzlies Player on December 9, 2024

28. Between on or about December 19, 2024, at about 4:00 p.m. and December 20, 2024, at about 1:00 a.m., a burglary occurred at the home of Professional Athlete 6 at Location 6 in Tennessee. Professional Athlete 6 plays for the Memphis Grizzlies in the NBA. At the time of the burglary, the Memphis Grizzlies were playing the Golden State Warriors at the FedExForum in Memphis, Tennessee.

29. The burglars stole from Location 6 jewelry, watches, and luxury bags valued at about $1,000,000.

### H. Identification of Defendants

30. On or about December 17, 2024, United States Magistrate Judge Karen L. Litkovitz authorized a search warrant for cellular tower data surrounding the

timeframe of the burglary, as well as for various license plate reader (LPR) cameras and a McDonald's in Miami, FL.

31. After reviewing the records described above, I learned of four suspected T-Mobile accounts and two suspected AT&T accounts identified through their IMSIs and IMEIs that connected to cellular telephone towers at key locations, to include Location 5, a Cincinnati-area LPR, a Jeffersonville, Indiana LPR, and a McDonald's in Miami, Florida where a rental vehicle was abandoned.

32. Law enforcement identified the suspect vehicle used in the burglary of Location 5 in Ohio as a white 2024 Volkswagen Atlas bearing Florida tag "RDDR37." The white 2024 Volkswagen Atlas was rented in South Florida. According to rental information for the car, I learned that the renter used a fraudulent Argentinean identification card to secure the use of the vehicle. I believe, based on my review of the photo, that the person depicted in the Argentinean driver's license was CABELLO. Based on my training, experience, and knowledge of the investigation, I believe that CABELLO used fake identification to rent the Volkswagen Atlas, crossed state lines with one or more coconspirators to burglarize Location 5, then returned in interstate commerce—and through the Middle District of Florida—to abandon the vehicle in furtherance of the charged conspiracy. Below are photos, clockwise from top left, of CABELLO's fake identification, a photo of him taken by the car rental company (driver's seat), and on the day of his arrest earlier this month.





33. On January 3, 2025, United States Magistrate Judge Thomas G. Wilson, Middle District of Florida, signed a search warrant for cellular tower data and prospective location data of the four suspected T-Mobile devices described above. Upon serving this search warrant, I learned that one of the cellular telephone numbers ("the 9991 Number") was active and was located in the Dayton, Ohio area.

34. On January 6, 2025, I received records from Apple for the iCloud Account described earlier in this affidavit. Upon reviewing the records, I observed photographs of four Hispanic males with several watches, necklaces, a ring, a

12

damaged safe, and burglary tools. Based on the layout of the room and the air conditioning unit in the background, I believe this photo was taken at a hotel near Location 4. Below I have included a few of the photographs from the iCloud Account.



35.     I identified three of the four subjects in this photo as P. ZUNIGA CARTES), IGNACIO ZUNIGA CARTES (I. ZUNIGA CARTES), and BASTIAN JIMENEZ FRERAUT (FRERAUT). The redacted person in the photo is unidentified. I believe the owner of the phone was P. ZUNIGA CARTES and that

he is holding the phone in his right hand in the above picture while photographing his coconspirators.

36. The above photograph had a timestamp of 7:18 p.m. on November 2, 2024, at approximately 7:18 p.m., just minutes after the burglary of Professional Athlete 4's home. In the photograph, several high-value watches and a damaged safe are observable. The high-value watches in the above photograph are consistent with the inventory of watches stolen from Location 4. Furthermore, the Hispanic male subject on the right-side of the photograph is wearing a necklace consistent with one stolen from Location 4.

37. Also of note is that P. ZUNIGA CARTES is wearing a Kansas City Chiefs shirt in the photo. Consistent with the conspirators boasting about the burglary of Professional Athlete 4, I believe based on my training, experience, and knowledge of the investigation that P. ZUNIGA CARTES is referring to the group's earlier burglaries in Kansas City of Professional Athletes 2 and 3. In my training and experience, SATG members often brag about their thefts to other SATG members. I believe that P. ZUNIGA CARTES, I. ZUNIGA CARTES, FRERAUT, and the unidentified subject were bragging to coconspirators about their recent burglary of Professional Athlete 4.



38.  The above photograph had a timestamp of 7:15 p.m. on November 2, 2024, again just a few minutes after the burglary of Location 4. In the photograph are high-value watches, a pendant, and a ring consistent with the inventory of items stolen from Location 4. Moreover, a yellow crowbar and a wooden and black rubber mallet are visible on the bed. In my training and experience, the crowbar and mallet are common burglary tools used to pry open a safe.

39.  Based on my training, experience, and knowledge of the investigation, I believe that P. ZUNIGA CARTES, I. ZUNIGA CARTES, FRERAUT, and an

unidentified coconspirator burglarized Location 4, returned to a nearby hotel, and took pictures with the items they stole from Professional Athlete 4 after prying the stolen safe open.

40. On January 10, 2025, I provided FBI Cincinnati and other local law enforcement with the location data for the 9991 Number pursuant to a search warrant obtained in the Middle District of Florida. FBI Cincinnati and local law enforcement used the location data for the 9991 Number and located a suspect vehicle identified as a black 2021 Chevrolet Trailblazer bearing Florida tag "87BHHC."

41. Law enforcement conducted surveillance on the Chevrolet Trailblazer and observed four Hispanic males entering it. Officers executed a traffic stop on the vehicle and identified the occupants as JORDAN QUIROGA SANCHEZ (SANCHEZ), BASTIAN ORELLANA MORALES (ORELLANA), ALEXANDER HUAIGUIL CHAVEZ (CHAVEZ), and SERGIO ORTEGA CABELLO (CABELLO).

42. During the traffic stop, officers discovered SANCHEZ, ORELLANA, CHAVEZ, and CABELLO to be in possession of several fraudulent identifications and burglary tools. SANCHEZ, ORELLANA, CHAVEZ, and CABELLO were arrested and charged with four Ohio State offenses (participating in a criminal gang, obstructing official business, possessing criminal tools, and engaging in a pattern of corrupt activity and conduct). Their cellular telephones were seized. The officers

identified each cellular telephone, its respective phone number, and the possessor of each phone. The cellular telephone with the 9991 Number belonged to SANCHEZ.

43.  On January 15, 2025, United States Magistrate Judge Sean Flynn, Middle District of Florida, authorized a search warrant for several Apple iCloud accounts associated with cellular telephone numbers identified to belong to subjects of this investigation. Upon receipt of the Apple iCloud accounts, I observed a photograph associated with an Apple iCloud account believed to be associated with ORELLANA. The photograph depicted a United State Postal Service ("USPS") package being sent from Individual 1 in Los Angeles, California to BASTIAN ORELLANA (ORELLANA) with a residential address in Orlando, in the Middle District of Florida. The phone number listed on the USPS package receipt for ORELLANA was a number ending in 6972 ("the 6972 Number"). This was the same number associated with the phone in ORELLANA's possession when arrested in Ohio.

44.  Using the location data for the 9991 Number associated with SANCHEZ, I learned that it had connected to cellular telephone towers in the vicinity of Location 6 during the timeframe of the burglary. Law enforcement further identified that the 9991 Number connected with a cellular telephone tower in the vicinity of the Days Inn located at 943 East Commerce Street, Hernando, Mississippi. Rental records from the Days Inn revealed that CHAVEZ rented a room there and provided a New York driver's license as a method of identification. CHAVEZ used a TD Bank Visa credit card to rent the room and was seen further

17

identified on the hotel's security cameras. Based on my training, experience, and knowledge of the investigation, I believe that CHAVEZ rented the Days Inn hotel room in furtherance of the conspiracy—specifically, as a safe location for the burglars to return to after burglarizing Location 6. I further believe that SANCHEZ, ORELLANO, and CABELLO comprise other members of this burglary group. CABELLO also has rented at least one vehicle in Florida that traveled to Ohio and back to Miami, passing through the Middle District of Florida, where it was abandoned. I believe this vehicle was associated with the burglary of Location 5.

45. I have reviewed additional records from the return of iCloud warrants. Of note in the returns is that there are a limited number of contacts saved. However, both sets of burglars have a common contact referred to as "Luis" using the 2875 number. The cellular telephone bearing this number was in the vicinity of Location 1 at the time of the burglary there, as well as near Location 5 during that burglary. Based on my training, experience, and knowledge of the investigation, I believe that this common contact, separate and distinct from the other numbers and individuals identified thus far, is further illustrative that the groups responsible for the burglaries at Locations 1 through 6 are interrelated and the acts described above are in furtherance of the charged conspiracy.

## CONCLUSION AND AUTHORIZATION REQUEST

46. In conclusion, based upon my training, experience, and knowledge of the investigation I believe that the Defendants are all members of a SATG that has conspired to commit violations of 18 U.S.C. § 2314, all in violation of 18 U.S.C. §

371. At least one burglary occurred in the Middle District of Florida, involving P.ZUNIGA CARTES and a person identified in contacts as "Luis." The participants in the burglaries are interrelated. On at least one occasion, a conspirator rented a vehicle in Florida using a false identification, transported it across state lines for one of the burglaries, then returned it in Florida while traversing the Middle District of Florida.

47. Based on the foregoing, I submit that there is probable cause to believe that the Defendants have violated 18 U.S.C. §§ 371 and 2314 (Interstate Transportation of Stolen Property and Conspiracy). I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Mark Sterling Dennis
Special Agent
Federal Bureau of Investigation

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 30 day of January, 2025.

AMANDA ARNOLD SANSONE
United States Magistrate Judge